IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **CLAREMONT RESTAURANT GROUP, LLC** | ) | 10-50525 |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S MOTION UNDER 11 U.S.C. §§ 105(a), 363, 364, 1107(a)
AND 1108 FOR ORDER (A) AUTHORIZING (i) MAINTENANCE OF
EXISTING BANK ACCOUNTS, (ii) CONTINUED USE OF EXISTING
BUSINESS FORMS, AND (iii) CONTINUED USE OF CASH
MANAGEMENT SYSTEM; AND (B) GRANTING RELATED RELIEF**

Claremont Restaurant Group, LLC, the above-captioned debtor and debtor-in-possession herein, hereby moves the Court for entry of an Order under 11 U.S.C. §§ 105(a), 363, 364, 1107(a), and 1108 (a) authorizing the Debtor to maintain and continue using its existing (i) bank accounts, (ii) checks and business forms, and (iii) cash management system; and (b) granting related relief (the "Motion"). In support of this Motion, the Debtor respectfully shows the Court as follows:

**INTRODUCTION**

1.  On April 16, 2010 (the "Petition Date"), the Debtor filed a voluntary petition in this Court seeking relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  No statutory committees have yet been appointed in these cases by the Bankruptcy Administrator.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief sought herein are sections 105(a), 363, 364, 1107(a), and 1108 of the Bankruptcy Code.

## THE DEBTORS' BUSINESSES

5. The Debtor owns and operates two restaurants in the State of Virginia and serves as the operational and financial nerve center for the operation of 30 additional restaurants in Tennessee, South Carolina and North Carolina.

## AUTHORITY TO MAINTAIN EXISTING BANK ACCOUNTS

6. The Bankruptcy Administrator has established operating guidelines for debtors that continue to operate their businesses. These guidelines require Chapter 11 debtors to, among other things, close all existing prepetition bank accounts and open new postpetition bank accounts. This requirement, which is designed to provide a clear line of demarcation between prepetition and postpetition transactions and operations, helps prevent an inadvertent postpetition payment of prepetition claims by, for example, preventing the banks from honoring checks drawn prior to the filing of the petition.

7. Before the Petition Date, the Debtor, in the ordinary course of business, maintained numerous bank accounts (the "Bank Accounts"). The account names and account numbers for the Bank Accounts are listed on **Exhibit A** to this Motion.

8. The Debtor seeks relief from the Bankruptcy Administrator's requirement that the prepetition bank accounts be closed and that new postpetition bank accounts be opened. If

enforced in this case, this requirement would cause significant disruption in the Debtor's business and would impair the Debtor's efforts to maximize the value of its estate's assets.

9. Maintenance and use of the Bank Accounts would greatly facilitate the Debtor's transition to postpetition operations. To avoid delays in payments to trade creditors and employees, and to ensure as smooth a transition to chapter 11 as possible with minimal disruption to their respective businesses, the Debtor should be permitted to continue to maintain and use the Bank Accounts, and, if necessary, to open new accounts.

10. On numerous occasions, courts have entered orders authorizing debtors to maintain their prepetition bank accounts. See, e.g., In re Fruit of the Loom, Ltd., Case No. 99-4497 (PJW) (Bankr. D. Del.) (Order dated Dec. 29, 1999); In re Safety Components International, Inc., No. 00-1644 (JJF) (D. Del.) (Order dated Apr. 10, 2000); In re ICO Global Communications Services Inc., Case No. 99-2933 (MFW) (Bankr. D. Del.) (Order dated Aug. 27, 1999); In re USN Communications, Inc., Case No. 99-383 (PJW) (Bankr. D. Del.) (Order dated Feb. 22, 1999). The honoring of checks will be without prejudice to the rights of any party in interest to seek the avoidance of such transfer(s).

11. A similar waiver of the account-closing requirement is necessary here. The Debtor requests that the Bank Account be deemed to be a debtor-in-possession account, and that the Court authorize its maintenance and continued use (in the same manner and with the same account numbers, styles, and document forms) as those employed during the prepetition period.

**AUTHORITY TO CONTINUE USE OF**
**EXISTING BUSINESS FORMS AND CHECKS**

12. To minimize expenses to its estate, the Debtor also requests that it be authorized to continue to use all correspondence, business forms (including, but not limited to, letterhead,

purchase orders, and invoices) and checks existing immediately prior to the Petition Date, without reference to its status as debtor.

13.     Changing correspondence and business forms would be unnecessary, burdensome to the Debtor's estate, expensive, and disruptive to the Debtor's business operations. See In re Gold-Standard Baking. Inc., 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995) (holding United States Trustee's requirement prohibiting issuance of checks without "debtor-in-possession" designation to be unenforceable). For these reasons, the Debtor requests that it be authorized to use existing business forms without being required to place the label "debtor-in-possession" on each.

## AUTHORITY TO CONTINUE USE OF CASH MANAGEMENT SYSTEM

14.     The Debtor utilizes a centralized cash management system (the "Cash Management System") in connection with the affiliated companies referenced above in the day-to-day operation of its business. The centralized Cash Management System is coordinated through the Debtor's corporate offices.

15.     The Debtor hereby seeks authority to continue utilizing the current Cash Management System. In light of the substantial size and complexity of the Debtor's operations and its affiliated companies, a successful reorganization of the Debtor's business, as well as the preservation and enhancement of the Debtor's respective values as going concerns, may be jeopardized if there is substantial disruption in the Debtor's cash management procedures. Accordingly, it is essential that the Debtor be permitted to continue to consolidate the management of cash and transfer monies between its affiliated companies as needed and in the amounts necessary to continue the operation of its business.

16.     Bankruptcy courts routinely grant Chapter 11 debtors authority to continue utilizing existing cash management systems, treating requests for such authority as a relatively "simple matter." In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  This is particularly true where, as here, a Chapter 11 cash involves affiliated debtors with complex financial affairs.  In Charter Co. v. Prudential Ins. Corp. Of America (In re Charter Co.), 778 F.2d 617, 618 (11th Cir. 1985), for example, the bankruptcy court previously entered an order authorizing the debtor and 43 of its subsidiaries to continue to consolidate the management of their cash as had been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that were not debtors.  Subsequently, the district court denied a creditor's motion for leave to appeal the bankruptcy court's cash management order.  The U.S. Court of Appeals for the Eleventh Circuit affirmed the district court's ruling and held that authorizing the debtors to utilize their pre-petition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code.  Id. at 621.

17.     Likewise, in another context, the Delaware bankruptcy court explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash.  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992) (examining validity of certain customer refund claims to funds maintained in Debtors' centralized cash management system), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993).  The Third Circuit agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." Columbia Gas, 997 F.2d at 1061.

**NOTICE**

18.     Notice of this Motion has been given to (a) the Bankruptcy Administrator, (b) counsel for the Debtor's secured lenders, and (c) the entities appearing on the list of creditors holding the twenty largest unsecured claims against the Debtor. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice need be given.

## NO PRIOR REQUEST

19.     No previous motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) authorizing the Debtor to maintain and continue using its existing (i) Bank Accounts, (ii) checks and other business forms without reference to the Debtor's status, and (iii) continued use of cash management system; and (b) granting the Debtor such other relief as is proper.

Dated:    April 19, 2010

                                HAMILTON MOON STEPHENS
                                STEELE & MARTIN, PLLC

                                _____
                                Travis W. Moon (Bar No. 3067)
                                Glenn C. Thompson (Bar No. 37221)
                                2020 Charlotte Plaza
                                201 South College Street
                                Charlotte, North Carolina 28244-2020
                                Telephone: (704) 344-1117
                                *Counsel for the Debtor*

# **EXHIBIT A**

**Bank Accounts**

{00224727.DOC V. J074.017840;}

| BANK | DBA | ACCT # |
|---|---|---|
| | **BB&T MASTER** | |
| BB&T (053101121) | DBA PRIME SIRLOIN #111 | 9106 |
| BB&T (053101121) | DBA Western Steer #151 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #509 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #514 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #516 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #517 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #519 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #520 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #523 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #524 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #525 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #527 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #533 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #535 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #536 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #538 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #539 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #541 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #544 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #545 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #547 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #548 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #549 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #551 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #554 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #558 | 9106 |
| BB&T (053101121) | DBA SAGEBRUSH #565 | 9106 |
| | **BANK OF AMERICA MASTER** | |
| BANK OF AMERICA | MASTER | 1205 |
| BANK OF AMERICA | DBA SAGEBRUSH #510 | 1904 |
| BANK OF AMERICA | DBA SAGEBRUSH #528 | 2026 |
| | **WACHOVIA MASTER** | |
| WACHOVIA BANK, N.A. (053101626) | DBA SAGEBRUSH #521 | 1383 |
| | **OUTLYING BANKS** | |
| First Tennessee | DBA Sagebrush #534 | 9289 |
| Wachovia | DBA Sagebrush #536 | |
| NB of Tennessee | DBA Sagebrush #543 | 3542 |
| SUNTRUST | DBA Sagebrush #546 | 2384 |
| SUNTRUST | DBA Sagebrush #557 | 4942 |
| | **AP CASH** | |
| BB&T (053101121) | Accounts Payable | 9122 |
| | **PAYROLL CASH** | |
| BB&T (053101121) | Payroll | 9130 |